IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| JIHAD SHAHADDAH, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-883 |
| | ) | |
| DEPUTY GOTCHER, *et al.*, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Jihad Shahaddah, an incarcerated but represented inmate, initiated this action pursuant to 42 U.S.C. § 1983 and Virginia law following an incident at the Arlington County Detention Facility.[1] Shahaddah was performing his duties as a workforce trustee when Deputy Gotcher unlocked inmate Andrew Rose's cell door. Rose ran out of his cell, began chasing Shahaddah, and threw a bucket of ice water towards Shahaddah and Deputy Gotcher. Shahaddah slipped on the ice water and injured himself. Shahaddah subsequently initiated this action, alleging that Deputy Gotcher failed to protect him and failed to intervene, in violation of the Eighth Amendment. Shahaddah also alleges that Deputy Gotcher was grossly negligent, in violation of Virginia law. Finally, Shahaddah contends that the Arlington County Sheriff's Office and Arlington County Sheriff Beth Arthur are liable under theories of *respondeat superior* and strict liability, respectively.

At issue now is defendants' Motion for Summary Judgment. Defendants argue that summary judgment must be entered in their favor because the undisputed factual record reveals that Deputy Gotcher was neither deliberatively indifferent to Shahaddah's safety nor grossly

---

[1] Shahaddah is now incarcerated at the Coffeewood Correctional Center. Am. Compl. ¶ 5.

1

negligent. The parties, by counsel, have fully briefed and argued the motion, and it is now ripe for disposition. For the reasons set forth herein, defendants' motion must be granted.

I.

Summary judgment is appropriate only where there are no genuine disputes of material fact, Fed. R. Civ. P. 56. Accordingly, the record facts as to which no genuine dispute exists must first be identified. To this end, Local Rule 56(B) directs a movant for summary judgment to include a section listing, in numbered-paragraph form, all material facts as to which the movant contends no genuine dispute exists. The nonmovant must then respond, also in numbered-paragraph form, to each numbered paragraph, either admitting or contesting the putative undisputed fact and citing admissible record evidence to establish a genuine dispute of material fact. Both parties have complied with this Local Rule. The following undisputed facts are derived from defendants' list of putative undisputed facts and Shahaddah's responses thereto, as well as the video of the incident:

- Deputy Gotcher is employed by the Arlington County Sheriff's Office and works in the Arlington County Detention Facility ("ACDF").

- On April 26, 2017, Deputy Gotcher was tasked with delivering meals to inmates in their cells in ACDF's 11A housing unit and subsequently retrieving the meal trays.

- Shahaddah, a member of the inmate workforce at ACDF, was assigned to assist Deputy Gotcher with meal delivery and tray retrieval on April 26, 2017.

- Following delivery of the meals, Deputy Gotcher approached inmate Andrew Rose's cell and attempted to collect Rose's meal tray. Shahaddah was on the other side of the 11A Day Area retrieving a trash can at the time.

- Deputy Gotcher asked Rose to put his meal tray in the food slot of his cell door, a small opening through which meal trays can pass through. Rose responded that he would not get off his bunk.

- Shahaddah retrieved the trash can and placed it by a table near Deputy Gotcher, who stood in front of Rose's cell. Shahaddah then moved slightly farther away and stood

next to the meal cart,[2] a large cart used to hold trays during meal service.

- Deputy Gotcher instructed Rose to stay at the back of his cell, away from the door at the front of the cell, so that Deputy Gotcher could open the cell door and remove Rose's meal tray. Rose did not make any threats or display any pre-assault indicators.[3]

- Rose kneeled on his bunk facing the wall, and Deputy Gotcher caused the opening of Rose's cell door.[4] Rose then got off his bunk,[5] and Deputy Gotcher issued verbal warnings to Rose to stay where he was. Rose did not comply.

- Deputy Gotcher attempted to close the cell door, but Rose escaped before Deputy Gotcher could close the cell door.[6] Rose ran out of his cell and began chasing Shahaddah.[7]

- Deputy Gotcher used the radio on his shoulder to call for assistance and then shouted multiple verbal commands at Rose to stop. Rose failed to comply. Deputy Gotcher took out his Oleoresin Capsicum ("OC") spray and moved to cut Rose off as Rose chased Shahaddah.

- Shahaddah ran behind Deputy Gotcher, who faced Rose. A table separated Deputy

---

[2] The parties dispute whether Shahaddah initiated this move or was instructed to move by Deputy Gotcher. This dispute is not material because even assuming Shahaddah initiated the move, Shahaddah cannot demonstrate that Deputy Gotcher was deliberately indifferent or grossly negligent, as discussed *infra*.

[3] Shahaddah purports to dispute this fact. However, Shahaddah does not actually dispute that Rose did not make any threats or display any pre-assault indicators. Rather, Shahaddah argues that Rose's lack of threats and pre-assault indicators "is contradicted by the Special Directive[s] on Rose." Pl.'s Opp'n 4. As discussed *infra*, the Special Directives list previous incidents involving Rose and contain precautions that are to be taken when Rose is outside of his cell. Pl.'s Ex. 3, 4. As such, they do not contradict how Rose behaved when Deputy Gotcher attempted to retrieve the meal tray. Accordingly, this is not a genuine dispute of material fact.

[4] The parties dispute whether Deputy Gotcher opened Rose's cell door with a key or radioed the tower and requested that Rose's cell door be opened. The dispute is not material, as it does not affect any of plaintiff's claims. Indeed, Shahaddah does not even contend that the dispute is material.

[5] Shahaddah purports to dispute defendants' contention that Rose got off his bunk when Deputy Gotcher attempted to enter Rose's cell and that Rose was previously kneeling on his bunk facing the wall, as instructed by Deputy Gotcher. This is not a genuine dispute of material fact. Shahaddah does not dispute defendants' contention that Deputy Gotcher caused the unlocking of Rose's door only after "Rose was kneeling on his bunk facing the wall." Defs.' Br. 3; Pl.'s Opp'n 5. Moreover, Shahaddah disputes these facts "to the extent that they are contradicted by the video footage of the incident. Specifically, the video footage reflects that Rose was moving in his cell, *as visible through the open door.*" Pl.'s Opp'n 5 (emphasis added). As such, the basis for Shahaddah's alleged dispute is that Rose can be seen moving through the open cell door. This is entirely consistent with defendants' assertion that Rose was on his bunk facing the wall when Deputy Gotcher caused the opening of Rose's cell door and that Rose subsequently got off his bunk when Deputy Gotcher attempted to enter the cell to retrieve the meal tray. Accordingly, this is not a genuine dispute of material fact.

[6] Defendants maintain that "Rose pushed his way through the cell door" "[a]s Deputy Gotcher attempted to shut the cell door." Defs.' Br. 3. Shahaddah disputes this, instead arguing that Rose "pushed his way out after the door had already largely been closed." Pl.'s Opp'n 5. This is not a genuine dispute of material fact because it does not affect any of Shahaddah's claims, nor does Shahaddah contend that it does.

[7] Shahaddah does not contend that Rose ever made physical contact with Shahaddah.

Gotcher and Shahaddah from Rose. Deputy Gotcher raised his OC spray, pointed it towards Rose, and took several steps towards Rose.

- Rose grabbed a bucket of ice water from the top of the meal cart and flung it towards Deputy Gotcher and Shahaddah. The bucket did not hit Deputy Gotcher or Shahaddah; rather, it fell to the ground, spilling ice water on the floor.

- Rose moved towards Shahaddah, who took several steps towards Rose. Deputy Gotcher moved closer to Rose and sprayed him with OC spray. Rose bent over, holding his face, and stopped his attack.

- While Rose stood still holding his hands to his face, Deputy Gotcher instructed Shahaddah to move away. Deputy Gotcher then signaled to responding deputies to enter the area.

- While Shahaddah sat on the stairs, another deputy entered the area and assisted Deputy Gotcher with handcuffing Rose and removing him from the unit.

- After Rose was removed, Shahaddah assisted Deputy Gotcher with completing the meal service and then exited the area with the meal cart.

Shahaddah later initiated this action, alleging that he hurt his knee when he slipped on the wet floor. Shahaddah also alleges that he developed anxiety, depression, sleeping difficulties, Post-Traumatic Stress Disorder, and hypertension as a result of Rose's attack. In the Second Amended Complaint, Shahaddah asserts the following three claims against Deputy Gotcher: (i) failure to protect, in violation of the Eighth Amendment and 42 U.S.C. § 1983; (ii) failure to intervene, in violation of the Eighth Amendment and 42 U.S.C. § 1983; and (iii) gross negligence, in violation of Virginia law. Shahaddah also seeks to hold the Arlington County Sheriff's Office liable under a theory of *respondeat superior* and to hold Arlington County Sheriff Beth Arthur, in her individual capacity, liable under a theory of strict liability.

## II.

The summary judgment standard is too well settled to require extensive elaboration. In essence, summary judgment is appropriate under Rule 56, Fed. R. Civ. P., only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

4

as a matter of law." A genuine factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court must "view the facts and draw all reasonable inferences in the light most favorable to the non-moving party." *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). Importantly, however, the non-movant may not rely on "mere allegations." *Id.* (citation omitted). Instead, the non-movant "must set forth specific facts that go beyond the mere existence of a scintilla of evidence." *Id.* (internal quotation marks and citation omitted). Given these principles, it is clear the material facts supporting summary judgment are undisputed and require that defendants' motion for summary judgment be granted.

### III.

The Eighth Amendment requires prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Yet despite this obligation, not all injuries prisoners suffer from other prisoners violate the Eighth Amendment. *Brown v. North Carolina Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010). A prisoner has a valid Eighth Amendment claim only where (i) "the deprivation alleged . . . [is] sufficiently serious" and (ii) the "prisoner . . . demonstrate[s] that the prison official had a sufficiently culpable state of mind." *Id.* (internal quotation marks and citations omitted). To establish the requisite state of mind, the prisoner must demonstrate that the prison official was "deliberate[ly] indifferen[t] to inmate health or safety." *Id.* Deliberate indifference requires that a prison official "know[] of and disregard[] an excessive risk to inmate health or safety." Importantly, the standard is a subjective one. *Farmer*, 511 U.S. at 835. Thus, the prison official must "subjectively recognize[] a substantial risk of harm . . . [and] subjectively recognize[] that his actions were inappropriate in light of that risk." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (internal quotation marks

5

and citations omitted). This twofold showing of actual, subjective knowledge may be made, however, using circumstantial evidence. *Id.* As such, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. Yet, as the Fourth Circuit has emphasized, "it is not enough that a reasonable officer *would have* found the risk to be obvious." *Parrish ex rel. Lee*, 372 F.3d at 303 (emphasis in original). Instead, "the risk of injury must be so obvious that the fact-finder could conclude that the [officer] *did* know of it because he could not have failed to know of it." *Id.* (internal quotation marks and citation omitted) (emphasis in original). Similarly, "a factfinder may conclude that the official's response to a perceived risk was so patently inadequate as to justify an inference that the official actually recognized that his response to the risk was inappropriate." *Id.* But, again, "it is not enough that the official *should* have recognized that his actions were inappropriate; the official actually *must have* recognized that his actions were insufficient." *Id.* (emphasis in original)

### A.

Shahaddah first argues that Deputy Gotcher violated Shahaddah's Eighth Amendment right to be free from cruel and unusual punishment by releasing Rose, relying on a failure to protect theory. To succeed on this claim, Shahaddah must establish that he suffered a sufficiently serious deprivation and that Deputy Gotcher was deliberately indifferent to Shahaddah's safety. *See Brown*, 612 F.3d at 723. Defendants do not dispute that Shahaddah's injuries constitute a sufficiently serious deprivation. Rather, defendants argue that Shahaddah cannot establish that Deputy Gotcher was deliberately indifferent when he caused the unlocking of Rose's cell door, allowing Rose to escape. Defendants are correct.

To establish that Deputy Gotcher evinced deliberate indifference, Shahaddah must demonstrate both (i) that Deputy Gotcher was aware of a substantial risk of harm to Shahaddah

from opening Rose's cell door and (ii) that Deputy Gotcher was aware that opening Rose's cell door was inappropriate in light of that risk. *See Parrish ex rel. Lee,* 372 F.3d at 303. Even assuming, *arguendo,* that Shahaddah can make the former showing, he cannot make the latter showing.

Shahaddah relies solely on two Special Directives to argue that Deputy Gotcher was aware that opening Rose's cell door presented a substantial risk of harm to Shahaddah. The Special Directives list incidents involving Rose and precautions that deputies must take regarding Rose. Pl.'s Ex. 3, 4. Specifically, Shahaddah notes that the Special Directive indicates that, prior to the April 26, 2017 incident involving Shahaddah, Rose: (i) assaulted an inmate with a broom; (ii) threw a meal tray out of his food slot, hitting a deputy's foot; and (iii) broke a sprinkler head, flooding a portion of his housing unit.[8] *Id.* Shahaddah also points out that the Special Directives stipulate that (i) "Rose is to be handcuffed using the leather restraint belt prior to him leaving his cell;" (ii) "Rose is to remain in restraints all times he is outside of his assigned cell;" (iii) when Rose is "out of his assigned cell, all other inmates are to be locked down;" and (iv) one or two deputies[9] must be present when "Rose is out of his assigned cell."[10] *Id.* (emphasis removed). Shahaddah argues that Deputy Gotcher's awareness of these incidents and precautions would

---

[8] The Special Directives also note that Rose "was involved in a physical altercation with [another inmate] . . . where he picked up cleaning supplies and furniture in a threatening manner to use against" that inmate. Pl.'s Ex. 3, 4. Shahaddah does not mention this incident, and the Special Directives do not indicate when it occurred. *See id.*

[9] One of the Special Directives requires that one deputy be present, and the other Special Directive requires that two deputies be present. *See id.* Although the parties do not address the issue, it appears from the dates that the former was in effect when the incident at issue occurred on April 26, 2017.

[10] The Special Directives also require that (i) Rose's handcuffs and leather restraint belt be removed after he is secured in the shower and replaced before he exits the shower, (ii) daily shakedown of Rose's cell area are to be conducted to prevent contraband and weapons, and (iii) Rose is to be pat searched upon exiting and returning to his cell. *See id.* One of the Special Directives also requires that Rose receive a bag meal, but the Special Directive that appears to have been in effect at the time of this incident requires that Rose receive a regular meal tray. *See id.* Shahaddah does not rely on or mention these requirements. *See generally* Pl.'s Opp'n.

allow a factfinder to conclude that Deputy Gotcher knew unlocking Rose's cell door presented a substantial risk of harm to Shahaddah.

Shahaddah is correct that "evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past," where the defendant is aware of that evidence, can support the conclusion that the prison official had actual knowledge of the risk. *Farmer*, 511 U.S. at 842–43. Yet these Special Directives are much weaker evidence of a substantial risk of serious harm than the evidence in the cases Shahaddah cites. In *Odom v. South Carolina Department of Corrections*, 349 F.3d 765, 767–78 (4th Cir. 2003), the Fourth Circuit concluded the defendant officers were aware of facts allowing an inference of a substantial risk of serious harm where the plaintiff told the defendant officers other inmates were going to try to kill him, those inmates spent forty-five minutes successfully tearing down the chain-link fence separating them from the plaintiff, and other officers directed defendant officers to move the plaintiff. Indeed, there, "one of the inmates pulled a piece of chain link fence out of his back pocket and threatened to stab [the defendant guard, who] then withdrew, looking at [plaintiff] and stating 'I ain't f with you.'" *Id.* at 768. And in *Cox v. Quinn*, 828 F.3d 227, 237 (4th Cir. 2016), the plaintiff repeatedly reported "that he was being threatened and robbed," "repeatedly informed the [defendant officers] that he feared for his safety" and requested to be separated from the other inmates, "requested that the correctional officers not discuss his concerns with [the other inmates] because he feared that would put him at even greater risk," and "renewed his plea for help to" one of the defendant officers shortly before being attacked by the other inmates. As such, these cases are unpersuasive because they involve greater evidence of a substantial risk of serious harm. Indeed, as defendants point out, Rose did not make threats or display pre-assaultive behaviors before Deputy Gotcher unlocked his cell door. And, importantly,

"it is not enough that a reasonable officer *would have* found the risk to be obvious." *Parrish ex rel. Lee,* 372 F.3d at 303 (emphasis in original). Instead, "the risk of injury must be so obvious that the fact-finder could conclude that the [officer] *did* know of it because he could not have failed to know of it." *Id.* (internal quotation marks and citation omitted) (emphasis in original). Shahaddah relies only on two prior assaults and instructions that Rose be in restraints with all other inmates on lockdown when outside his cell to argue that briefly opening Rose's cell door—with a deputy standing in the doorway—while Rose was on the other side of the cell created a substantial risk of serious harm to Shahaddah. It cannot be said that the risk of injury in these circumstances was "so obvious" that Deputy Gotcher "could not have failed to know of it." *Id.*

Furthermore, even if the Special Directives gave rise to an inference that unlocking Rose's cell door created a substantial risk of serious harm to Shahaddah, merely establishing that Deputy Gotcher was aware of the Special Directives is not enough. *See Farmer,* 511 U.S. at 835. Shahaddah must also establish that Deputy Gotcher, himself, drew the inference that unlocking Rose's cell door created a substantial risk of serious harm to Shahaddah. *See id.* This showing may, of course, be made with circumstantial evidence. *See id.* But the circumstantial evidence suggests that Deputy Gotcher did not draw the inference from the Special Directives that unlocking Rose's cell doors created a substantial risk of serious harm to Shahaddah. This is because Deputy Gotcher seemingly faced the same risk as Shahaddah and presumably would not have exposed himself to a substantial risk of serious harm had he perceived that risk. Shahaddah does not argue that Rose threatened Shahaddah. Indeed, Shahaddah has not identified any evidence suggesting— nor has he argued—that Shahaddah was at a greater risk of being attacked by Rose than Deputy Gotcher. Furthermore, Shahaddah points to two prior assaults Rose committed; one was directed towards a guard, and the other an inmate. As such, there is no reason to conclude that Deputy

9

Gotcher's unlocking of Rose's cell doors created a greater risk for Shahaddah than Deputy Gotcher.[11] Given this, that Deputy Gotcher unlocked Rose's cell doors suggests that he did not perceive a substantial risk of serious harm from unlocking Rose's cell doors. Nevertheless, even assuming, *arguendo*, that Shahaddah can establish Deputy Gotcher subjectively recognized a substantial risk of harm, Shahaddah cannot satisfy the latter part of the deliberate indifference standard.

The second part of the deliberate indifference standard requires a plaintiff to demonstrate that the prison official was subjectively aware that his actions were inappropriate in light of the risk. *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004). As such, a prison official is not deliberately indifferent "where, although he is aware of the existence of a general risk, he is unaware that his conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). Shahaddah cannot establish that Deputy Gotcher was aware that his actions were inappropriate in light of the assumed substantial risk of serious harm to Shahaddah.

Shahaddah is correct that "a factfinder may conclude that the official's response to a perceived risk was so patently inadequate as to justify an inference that the official actually recognized that his response to the risk was inappropriate." *Parrish ex rel.*, 372 F.3d at 303. But Shahaddah has not demonstrated that Deputy Gotcher's response to the risk was patently inadequate.

In this respect, Shahaddah relies only on *Cox v. Quinn*, 828 F.3d 227 (4th Cir. 2016). Yet, there, the officers "s[ought], but disregard[ed], [a superior's] advice, and t[ook] the one action [plaintiff] specifically warned would put him at greater risk." *Cox*, 828 F.3d at 237. Neither

---

[11] It may be argued that Deputy Gotcher faced a greater risk of harm than Shahaddah because Deputy Gotcher stood at the entrance to Rose's cell, whereas Shahaddah stood farther back.

10

occurred here. Shahaddah contends that Deputy Gotcher failed to follow a superior's instructions because "Gotcher was required to place Rose in restraints whenever his cell would be opened or when he would be released." Pl.'s Opp'n 10. This is incorrect. The Special Directives, the only evidence Shahaddah cites in support of this assertion, require that "Rose is to be handcuffed using the leather restraint belt prior to him leaving his cell" and that "Rose is to remain in restraints all times he is outside of his assigned cell." Pl.'s Ex. 3, 4 (emphasis removed). The Special Directives do not require that Shahaddah be placed in restraints whenever his cell door is opened.[12] *See id.* Indeed, they contain no instructions regarding the opening of Shahaddah's cell door. *See id.* Nor is the second factor relied on in *Cox* present here, as Shahaddah does not allege that Deputy Gotcher took any action Shahaddah warned would put him at greater risk. As such, *Cox* is inapposite.

Moreover, Deputy Gotcher took steps to reduce the risk. Thus, he instructed Rose to stay at the back of the cell, on the opposite side to the cell door. And he did not unlock the cell door until Rose had complied and Shahaddah was standing back, next to the meal cart. It cannot be said that unlocking Rose's cell door, after taking these precautions, "was so patently inadequate as to justify an inference that [Deputy Gotcher] actually recognized that his response to the risk was inappropriate." *Parrish ex rel.*, 372 F.3d at 303. Indeed, as discussed *supra*, that Deputy Gotcher seemingly faced the same risk as Shahaddah only reinforces the conclusion that he did not subjectively believe that his actions were inappropriate in light of the risk. Accordingly, even assuming, *arguendo,* that Deputy Gotcher was aware of a substantial risk to Shahaddah's safety,

---

[12] Similarly, Shahaddah's contention that Deputy Gotcher failed to follow a superior's instruction not to "allow[] Rose to be released while Shahaddah was not on lockdown" is unavailing. Pl.'s Opp'n 10. The Special Directives instruct that "[w]hile [Rose is] out of his assigned cell, all other inmates are to be locked down." Shahaddah does not contend that Deputy Gotcher intended or anticipated that Rose would get out of his cell. Indeed, as discussed *infra,* Deputy Gotcher sought to prevent Rose from getting out of his cell by instructing Rose to stay at the back of his cell, on the side opposite to the cell door, and waiting until Rose had complied to unlock the cell door.

11

Deputy Gotcher did not violate the Eighth Amendment when he took steps to unlock Rose's cell door because Shahaddah cannot establish that Deputy Gotcher was subjectively aware that his actions were inappropriate in light of the risk. *See Farmer*, 511 U.S. at 844.

B.

Shahaddah next argues that Deputy Gotcher violated the Eighth Amendment by failing to intervene to stop Rose's attack against Shahaddah. As with his failure to protect claim, to succeed on this claim, Shahaddah must establish that he suffered a sufficiently serious deprivation and that Deputy Gotcher was deliberately indifferent. *See Brown*, 612 F.3d at 723. Defendants argue, correctly, that Shahaddah cannot establish that Deputy Gotcher was deliberately indifferent in failing to intervene in Rose's attack. Summary judgment must therefore be entered in defendants' favor with respect to Shahaddah's failure to intervene claim.

To establish deliberate indifference, Shahaddah must demonstrate that Deputy Gotcher was aware of a substantial risk of harm to Shahaddah by failing to intervene and that Deputy Gotcher was aware that his actions were inappropriate in light of the risk. Shahaddah cannot make the latter showing; he cannot establish that Deputy Gotcher was aware that his actions were inappropriate in light of the risk. *See id.* This is because Deputy Gotcher took prompt action to stop Rose's attack. Indeed, Deputy Gotcher was successful in quickly stopping the attack.

Shahaddah relies only on *Raynor v. Pugh*, 817 F.3d 123 (4th Cir. 2016), to argue that Deputy Gotcher was aware that his actions were inappropriate in light of the risk of harm to Shahaddah. In *Raynor*, the Fourth Circuit recognized that "a correction officer's failure to intervene in a beating can be the basis of [§ 1983] liability if the officer had a reasonable opportunity to act and simply refused to do so." 817 F.3d at 128 (internal quotation marks and citation omitted). That is not the case here. It is undisputed that Deputy Gotcher radioed for

assistance as soon as Rose escaped. It is also undisputed that Deputy Gotcher next shouted verbal commands at Rose to stop, moved to cut Rose off, and took out his OC spray. Finally, it is undisputed that Deputy Gotcher sprayed Rose with the OC spray, stopping Rose's attack. All of this occurred within fifteen seconds of Rose's escape. As such, it cannot seriously be argued that Deputy Gotcher failed to respond reasonably. Indeed, Deputy Gotcher's actions were diametrically opposed to those of the defendant officer in *Raynor*. There, the defendant officer "watched the entire incident .. without radioing for assistance or taking any other action." *Raynor*, 817 F.3d at 129. Deputy Gotcher, on the other hand, radioed for assistance as soon as Rose escaped and then took action to stop the attack himself within fifteen seconds, including stepping in between Rose and Shahaddah. Indeed, it is difficult to know what more Deputy Gotcher could have done to stop the attack. Accordingly, because Shahaddah cannot demonstrate that Deputy Gotcher's response to Rose's attack was unreasonable, summary judgment must be entered for Deputy Gotcher with respect to the failure to intervene claim.[13]

---

[13] Shahaddah contends that three factual disputes preclude summary judgment, but the alleged disputes are not genuine disputes of material fact. First, Shahaddah argues that Deputy Gotcher testified that he took a step into Rose's cell but that the video does not corroborate this testimony. Yet, Deputy Gotcher did not expressly state that he stepped into Rose's cell, but rather responded yes when asked, "You opened the door and you took a step in?" Gotcher Dep. 111:3–5. More importantly, this dispute is not material; defendants do not contend that Deputy Gotcher took a step into Rose's cell, and whether Deputy Gotcher took a step into the cell prior to Rose's escape does not affect the reasonableness of his reaction to Rose's escape. Indeed, Shahaddah does not even attempt to identify how the dispute is material. Second, Shahaddah claims that "when Rose approached the door, Gotcher was already outside with the door almost latched. Yet, Gotcher argues that Rose was able to push his way out of the cell despite the door being almost closed and his own presence on the other side." Pl.'s Opp'n 12 (citations omitted). This alleged dispute is not genuine, as the two statements are consistent; the parties agree that Rose's cell door was almost closed when Rose pushed it open and escaped. Finally, Shahaddah contends that Deputy Gotcher "did not use his OC spray or act in any way to subdue or stop Rose" as Rose exited the cell. Pl.'s Opp'n 12. Yet, Deputy Gotcher did take immediate action to stop Rose. It is undisputed that Deputy Gotcher radioed for assistance as soon as Rose escaped. Furthermore, it is undisputed that, after radioing for assistance, Deputy Gotcher moved to cut Rose off as Rose chased Shahaddah, raised his OC spray, and sprayed Rose to stop the attack. Indeed, Deputy Gotcher succeeded in stopping the attack within fifteen seconds of Rose's escape. Accordingly, there is no genuine dispute of material fact.

## IV.

To state a claim of gross negligence under Virginia law, a plaintiff must allege "a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." *Elliott v. Carter,* 791 S.E.2d 730, 732 (Va. 2016) (citation omitted). In essence, the plaintiff must demonstrate "a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful recklessness." *Id.* (citation omitted).

In Virginia, "ordinarily, whether gross negligence has been established is a matter of fact to be decided by a jury." *Id.* (citation omitted). But "when persons of reasonable minds could not differ upon the conclusion that such negligence has not been established, it is the court's duty to so rule." *Id.* (citation omitted). Furthermore, "[b]ecause the standard for gross negligence [in Virginia] is one of indifference, not inadequacy, a claim for gross negligence must fail as a matter of law when the evidence shows that the defendants exercised some degree of care." *Id.* (internal quotation marks and citations omitted).

### A.

Shahaddah next claims that Deputy Gotcher was grossly negligent, in violation of Virginia law. To succeed on this claim, Shahaddah must establish that Deputy Gotcher displayed "a degree of negligence that would shock fair-minded persons." *Elliott,* 791 S.E.2d at 732. Defendants argue that Shahaddah cannot make this showing because Deputy Gotcher exercised care in unlocking Rose's cell door and stopping Rose's attack. Defendants are correct.

A plaintiff's gross negligence claim fails as a matter of Virginia law "when the evidence shows that the defendant[] exercised some degree of care." *Elliott,* 791 S.E.2d at 732. To the extent Shahaddah's gross negligence claim rests on Deputy Gotcher's unlocking of Rose's cell door, the

evidence here shows Deputy Gotcher exercised care. Before Deputy Gotcher opened the door, he instructed Rose to stay at the back of the cell, opposite the cell door. The evidence also shows that Deputy Gotcher waited to open the door until Rose—who had not been making threats or displaying pre-assault behaviors—complied with the instruction. Finally, the evidence reveals that Deputy Gotcher did not open the door until Shahaddah was standing back, near the meal cart. And, to the extent Shahaddah's gross negligence claim rests on Deputy Gotcher's response to Rose's attack, the evidence similarly reveals that Deputy Gotcher exercised care. Deputy Gotcher immediately radioed for assistance and then moved to cut Rose off, pointed his OC spray towards Rose, and sprayed Rose, ending the attack within fifteen seconds. Although Deputy Gotcher was unsuccessful in preventing Shahaddah's injury, this does not prevent Shahaddah's claim from failing as a matter of law. *See id.* at 733. As the Supreme Court of Virginia concluded in *Elliott*, "although [defendant]'s efforts may have been inadequate or ineffectual, they were not so insufficient as to constitute the indifference and utter disregard of prudence that would amount to a complete neglect for [plaintiff]'s safety, which is required to establish gross negligence."[14] *Id.*

Shahaddah argues that *Green v. Ingram*, 608 S.E.2d 917 (Va. 2005), in which the Supreme Court of Virginia concluded the plaintiff presented sufficient evidence to survive a motion to strike, is "particularly apposite to the facts here." Pl.'s Opp'n 13. Shahaddah's argument fails. *Greene* is not particularly apposite to the facts here. In *Green*, the officer used a shotgun to fire five frangible rounds—designed to disintegrate upon impact with metal—at a wooden kitchen door

---

[14] Shahaddah argues that defendants rely on the faulty proposition that any diligence and care, no matter how slight, defeats a gross negligence claim. This is not so. As discussed *supra*, Deputy Gotcher exercised care that was far from trivial. Furthermore, the Supreme Court of Virginia affirmed the finding that a defendant officer who ran a red light, hitting and severely injuring the plaintiff, while chasing a suspect exercised "some degree of care," foreclosing a gross negligence claim, where he "activated his lights and, at least for part of the time, his siren[, drove at a] speed no more than five miles over the speed limit, and . . . swerved and braked in an attempt to avoid the collision." *Colby v. Boyden*, 400 S.E.2d 184, 185, 189 (Va. 1991). Deputy Gotcher exercised at least as much care here.

in an attempt to open the door while executing a search warrant. *Green*, 608 S.E.2d at 918–19. Fragments of the frangible rounds struck and killed a woman inside the home. *Id.* at 920. Evidence introduced at trial supported the conclusion that the defendant officer fired the shots into a part of the wooden door that did not contain metal, contrary to training that the rounds should be fired into a metal mechanism attached to the door. *Id.* at 923. The facts of *Green* are plainly inapposite to the facts here.

Shahaddah further argues that *Green* is apposite because the defendant officer there, like Deputy Gotcher, "'departed from instruction and training,' and that, as such, he . . . acted with 'an utter disregard of prudence amounting to a complete neglect of the safety of others.'" Pl.'s Opp'n 13 (quoting *Green*, 608 S.E.2d at 923). But Shahaddah conveniently omits the text in between those statements, which makes clear that the Supreme Court of Virginia did not base its finding that a reasonable jury could conclude the defendant officer acted with "an utter disregard of prudence amounting to a complete neglect of the safety of others" only on the defendant officer's failure to follow instructions and training. Indeed, the Supreme Court of Virginia expressly held that "[g]iven [defendant]'s own testimony" that he was "always" aware that people could be on the other side of the door, "a reasonable jury could have concluded that [defendant] acted with" gross negligence. *Green*, 608 S.E.2d at 922. The Supreme Court of Virginia thus did not conclude that the defendant's mere failure to follow training created a jury question on gross negligence; rather, the Supreme Court of Virginia expressly relied on the defendant's firing of five frangible bullets into a door when executing a search warrant and his admission that he was "always" aware people could be on the other side of the door when concluding the gross negligence claim survived a motion to strike.

Furthermore, Shahaddah has not demonstrated that Deputy Gotcher deviated from his instruction and training when he opened the cell door or reacted to Rose's attack. Shahaddah's contention that Deputy Gotcher deviated from instructions when he unlocked the cell door is unsubstantiated because, as discussed *supra*, the Special Directives required Rose to be handcuffed when outside his cell, and Deputy Gotcher neither intended nor anticipated that Rose would get out of his cell. And Shahaddah's contention that Deputy Gotcher deviated from his training and instruction when he allegedly failed to adequately intervene in the ensuing assault is unsubstantiated because Shahaddah has not identified any instructions or training that Deputy Gotcher violated. Moreover, as discussed *supra*, Deputy Gotcher took prompt action to end the attack, and succeeded in doing so within fifteen seconds.

### B.

Finally, Deputy Gotcher seeks to hold the Arlington County Sheriff's Office liable under a theory of *respondeat superior* and to hold Arlington County Sheriff Beth Arthur, in her individual capacity, liable under a theory of strict liability. Defendants argue that these claims fail as a matter of law because the tort on which they are based—Deputy Gotcher's alleged gross negligence—fails as a matter of law. Defendants are correct. Summary judgment must be entered in defendants' favor with respect to these claims.

### IV.

Accordingly, and for the reasons discussed above, defendants' Motion for Summary Judgment must be granted.

An appropriate Order will issue.

Alexandria, Virginia
June 17, 2019

/s/
T. S. Ellis, III
United States District Judge

17